Good morning, Your Honor. May it please the Court, Robert Dunn for petitioner. I'd like to reserve three minutes. Related to the Dunn of Gibson, Dunn, are you? Not to my knowledge, Your Honor. Oh, you're disappointing me. I didn't disclose that at the interview, though. Kept that to myself. Your Honor, petitioner entered the country. Anyway, it didn't hurt. It did not hurt. I don't think so. Petitioner entered the United States in 1975 as a five-year old, fleeing with his family from the violence of the Civil War that had already claimed the life of his brother, his uncle, and several other distant relatives. Since that time, he lived in the United States continuously for 38 years until he was deported in 2013. His mother is here. His half-brother is here. He has two children here. He has no family in El Salvador, where he is currently hunkered down in a small room outside the Capitol. But because the Board of Immigration Appeals found that his voluntary manslaughter conviction is an aggravated felony, he is permanently barred from applying for a visa. He's permanently can still grant him meaningful relief, even though he is out of the country and has been removed. Now, I think the briefs kind of cut down a couple of the issues in the underbrush. As I read it, the government has conceded that a conviction today under Section 192A for voluntary manslaughter in California would not be a categorical crime of violence because the California Supreme Court has held very clearly it does not require intent. You can be convicted a passion without malice of forethought. You accidentally, unintentionally kill someone. You know, you meant to scare them or something, but you accidentally kill them. You can still be convicted. And this court has held very clearly that only crimes of intent count as categorical crimes of violence. That's the Covarrubias decision and Fernandez-Ruiz. And I think the government has essentially conceded that in their brief. The Board, however, made an end around what I believe is an inescapable conclusion by saying, well, it may not be a categorical crime of violence today, but that crime used to be a categorical crime of violence back in 1990 when the conviction happened. And that is clearly wrong for the two reasons we set forth in our brief. First, the statute at issue 192A has not changed since essentially the gold rush in 1872, and it has never, ever required intent. The statute says manslaughter is the unlawful. The gold rush was in 1872. Yeah, it's a little bit after the gold rush. The statute says manslaughter is the unlawful killing of a human being without malice of forethought under a sudden quarrel or heat of passion. So the statute doesn't say And in 2000, the California Supreme Court in Lascaux said very clearly the statute has never required intent. The legislature that enacted that statute did not impose an intent requirement. The most immediate following decision by the California Court of Appeal and people of E. Crowe looked at Lascaux and said, yeah, Lascaux did not redefine the crime. It didn't redefine the elements of the crime. All it did is clarify what the statute has always meant, and it said there are some cases that have been mere dictum, fleeting observations to the contrary. The court essentially admitted it had been sloppy in some of its previous opinions in the way that it had described voluntary manslaughter. But it made very clear it was not redefining the statute. So it is simply not the case that voluntary manslaughter required intent in 1990. It never required intent. And what the board did is it looked at the model jury instructions at the time, which erroneously said has to be killing with intent, and it said, well, see, the jury instructions at the time means he must have been convicted of intent. But the fact is he wasn't convicted by a jury, so those jury instructions were never read to a jury. And under a modified categorical approach, perhaps you could dig down in the record and find out, oh, the jury was told they could only convict with intent, and the jury convicted, therefore he must have been convicted of intent. But this is not a modified categorical approach case. It's a pure, straightforward categorical approach case. And the way that this court has always dealt with categorical approach cases is to look at the statute of R and then compare it to the federal generic offense. And that is what the board failed to do, because had the board done that, they would say exactly what the government has said in their answering brief, which is that today the statute does not require intent, the federal crime does. And that would be the end of the story. And I think what is troubling here is that if this court endorses what the BIA did, it is, A, it's going to create a split inside the circuit with Flores-Cordero and other cases, which have very clearly held that you don't look back at the time of conviction, try to figure out what the state of the common law was at that time, what you look at is the prevailing law today. And that's what the court said in Flores-Cordero. It said, under prevailing Arizona law, today the crime of resisting arrest, which was at issue then, is no longer a crime of violence, even though it was in 1999 when Flores-Cordero was convicted. So if this court endorses what the board did, we're going to have a circuit split, or an intra-circuit split, with other opinions of this court, as well as the numerous other decisions that have looked to state supreme court and state court of appeal decisions that post-date the conviction. So this case actually, I think, presents the panel an opportunity to just clarify how to do the categorical approach for the board. And I think the clarification is, you've got to figure out what the statute means today. Unless the legislature has fundamentally rewritten the statute, which it has not done here, the categorical approach just takes, I guess, the normal way of looking at a judicial opinion, which is that judicial opinion tells you what the statute means now and what it has always meant. And the Supreme Court of the United States has said that's how common law judging works in Rivers v. Roadway Express, I believe. It says when we make a decision interpreting a statute, we're not making a new rule or a new law, we're telling you what the statute has always meant. Judicial opinions have always been retroactive in that way. And so I think the court just needs to clarify how the categorical approach works. And under the categorical approach, I don't see any way that this court can reach a conclusion other than the conclusion that was reached in the categorical aggravated felony crime of violence. And as I mentioned earlier, that is exceptionally important for Mr. Quijada because he wants to come back to the country where his children and his mother and his brother are. He's going to have to apply for a visa. He's going to have to apply for a waiver under 1182H. He has other hurdles. But the aggravated felony finding is essentially an insurmountable barrier that he's locked out of the country. The only country he knows. I mean, he never lived in El Salvador beyond the age of five. Doesn't know anybody there. And so now he's here to address the cat claim before your time runs out. In the brief to the BIA, it talks about the fact that he is a criminal deportee and the level of violence that he may face as a result of that. It doesn't specifically address his criminal, his family history and his relationship to the various members of his family who've been killed. Is that sufficient to preserve that claim? Your Honor, our view on this is that once he has preserved the cat claim itself and he has asked the board to look at the IJ's decision denying him deferral of removal under cat, once he's put that squarely on the table, the board is obligated to look at the record that was before the IJ and make an assessment of whether or not he showed that there was a likelihood of torture. Lamentably, the brief did not press that argument. It didn't push that evidence into the face of the board in the brief, but the claim itself was clearly presented and that is what is required for exhaustion and the implementing regulations require the board to look at all available evidence. And I think what the board did here is it basically treated them as if they were two separate claims, which doesn't really make sense and it flies in the face of this court's decision in Cole, which is a withholding of removal under cat. The issue is, given everything, the likelihood that you will be tortured, given all of the evidence that you've presented, you don't parcel it up and say, well, what is the evidence that this small reason, you have to aggregate it together and figure out, in light of everything, is it more likely or not that you'd be tortured? And so our view is the board just advocated its responsibility to look at the record. And it's not a long record. It would not have taken the board much time to read the testimony. It takes all of about five minutes to read the testimony. What was the sentence on this? On his voluntary manslaughter conviction? It was an 11-year sentence, Your Honor. And so he served that. He did. And this is a case, this involved a shotgun, didn't it? That was what the criminal information said. The document where he was actually convicted to the voluntary manslaughter, the pleading document, I don't think references the shotgun. But in the criminal information, the government alleged that the killing was done with a shotgun. Yes, he was... That was in a heat of passion, is that what it was? Well, again, we know almost no facts of the case because the government didn't press a modified categorical approach, so all we have is the basic charging documents. I can relate what his mother has related to me, but that would be all hearsay about the crime itself. But yes, the crime he pled guilty to involved a heat of passion or sudden quarrel under the statute. So specifically, what we're asking the court to do is just to vacate the board's order. The board can then re-evaluate the evidence and decide whether or not it should have granted deferral of removal under CAT or withhold it once the aggravated felony conviction is wiped off. And at that point, they obviously can't bring him back. They're not going to send a helicopter down to get Mr. Quijada Aguilar and bring him back. But if they wipe out the removal order itself, that too will eliminate a bar to admissibility. So right now, he basically is double-barred from admissibility. He has a 10-year bar because he's been removed, and he has a permanent bar because he has an aggravated felony. And if we can get those bars out of the way, he then at least can apply for the waiver and get a visa under 1182H. So it's a limited relief that the court can offer, but it's meaningful to him, because it's the difference between maybe coming back and never coming back. So he'd have to wait in line. He will. And his, I think, predominant claim would be he has an aging mother here that he'd like to come back and help take care of. He was living with her between the time he was released from prison in 2001 and deported in 2013. How old are his children now? I think his oldest child is now about 10, maybe slightly older than 10. And the other one was a year or two younger. And the mother is here as well. Yeah, the mother lives in Bakersfield, and she runs a courier business that he was working for. He was working with his mother. And I believe mother, half-brother, and Quijada Aguilar were all living together in Bakersfield. What, do they just drop off documents and packages? Is that what they do? That's my understanding of it, yeah. If there are no further questions, I'd like to reserve the balance. Good morning. Kate DeAngelis for the Attorney General. A couple of things I'd like to point out here. I think it's not proper to say that the most important thing or the only thing involved in the categorical approach is a comparison of the statutory language to the federal statute. That's just not true. And this court has held repeatedly, including in 2013, that what's important is that the court considers not only the statutory language, but also the state court's interpretation of their own statutes. Here, there's no question. In fact, this court has noted in 2007 that the California manslaughter statute required an intent-to-kill determination prior to Lascaux, clearly within the time that this conviction occurred. But the government agrees that if we were to look at the California Supreme Court's interpretation of Penal Code Section 192A in Lascaux, then there would be no categorical match, right? So that's, let me start you there. Right. Insofar as it's not applicable to this case. I mean, it's completely outside of this case. But it does appear that the court's interpretation shifted, broadening the statute and making it possibly not a categorical offense. Although I do think that in Leocal- Well, possibly not a categorical offense. The government doesn't even concede that. Well, there's one unpublished decision before this court where the issue's been analyzed. And there is Fernandez-Ruiz, but Leocal did leave open the question of whether recklessness could still lead to a determination that it was a categorical crime. So I don't think it's important at all for this case whether the government concedes that if the conviction had occurred in 2000 or post-2000 that it may or may not have been a categorical crime of violence because it's clear- Well, it's important because for me, I start there, right? The California Supreme Court is the highest court in the state. They've looked at their own state statute of conviction. And they have indicated that someone can be convicted of a Penal Code Section 192A based on reckless conduct. In other words, there's no intentional use of force required. Right. I would agree with that, yes. All right. So now what the government wants to do is it wants to look at the state of the law at the time of Mr. Quijada Aguilar's conviction, correct? Right. And what support does the government have that we can apply that kind of time-specific analysis to the question of whether it's categorically a match with a state statute? Well, I mean, it would be a much easier case if there was a case on point. There is not. But the categorical approach does demand that the trier consider what the law was at the time or, excuse me, what the law underlying the conviction was. Here it's very clear. There's no question. There had to have been an intent to kill for this conviction. The fact that the California state changed their interpretation and the movement through the courts is very clear from the case law. There are tons of cases in the California state courts prior to Lascaux and post-Lascaux where the court acknowledged that this was a change. So this is actually a perfect categorical case because we know, looking at the case law, that he could not have been convicted had he not had the intent to kill. And, in fact, the jury instructions were amended after the Lascaux case to completely change the way the juries were instructed, and they contain a footnote that explicitly directs that the new instructions are not to be given in cases prior to Lascaux. Do we look at jury instructions in a categorical analysis or just under the modified categorical approach? We absolutely can look at the jury instructions here because we're not looking at the specific jury instructions relative to the facts of this case. We're looking at the jury instruction insofar as it educates us about the state of the law. It's a legal document. I mean, it would be improper to look at jury instructions that were given in this case, and that's not what we're doing here. The jury instructions actually support what's very obvious from a reading of the law, which is that this statute was broadened by the California state courts. At the time the petitioner was convicted, the courts required an intent to kill. If there are no other questions on that specific issue, with regard to the Catt claim, I would just say that the issue was definitely not exhausted before the board, and it's not true that simply raising- He squarely raised the Catt claim before the BIA, right? Yes. So you're saying that he has to make every specific argument, particularly every ground in support of his Catt claim, otherwise the BIA doesn't have to address it? Well, most certainly the alien bears the burden of proving that he's eligible for the relief that he seeks. Here it's Catt deferral. The alien has to at least put the agency on notice of what the basis for his claim is. In his brief to the board, he made no mention of the Civil War in El Salvador, which occurred 35 to 40 years before. So the board is not required to dig through the record and try and create claims for the benefit of the petitioner. So no, I would not say that simply raising any Catt claim makes all available claims available to the petitioner at any stage without meeting the exhaustion requirement. Does it make all available arguments available to the petitioner? Well, I don't believe that a petitioner can properly argue on an unexhausted claim. So I think he can make the argument that he exhausted the claim, but I don't think the argument that he merits Catt deferral based on a claim that was not raised to the board is proper. If the court has no further questions, I'll just submit the case from there. Thank you. Quick points, Your Honor. The government acknowledges that this court is supposed to look at binding California Supreme Court opinion, but the only way the board could reach its decision was by ignoring what Lasko said, which is that the statute itself has never required intent. And the court in Lasko cited two opinions from 1877 and said our decision today is perfectly consistent with what we said about the statute then, which is that intent is not required. It may exist, it may not exist. So I think what the board has done and what the government is asking is not only a misapplication of the categorical approach, but a total disregard of California Supreme Court opinion and what the California Supreme Court has said, which raises other federalism concerns to say, well, they didn't really mean that because of what the jury instructions at the time said. No one's arguing that there weren't jury instructions that required intent, and had he been convicted under those jury instructions and the modified categorical approach used, this case might result in an aggravated felony finding. But the jury instructions that were floating around in 1990 that were never issued in this case to our knowledge cannot overrule Lasko and what the California Supreme Court has said that the statute requires and has always required. And then second, yes, it's too bad he didn't raise all of the arguments in the brief, but the idea that the board would have had to go digging around in the record to find undiscovered evidence clearly just can't apply to this case because the board looked and said, oh, there was evidence presented of this type of torture, but we're not going to look at it. It specifically knew what the evidence was, and it just said, but we're going to ignore it because he didn't sufficiently discuss it in the brief. If there's ever a case where there was exhaustion and there is no prejudice to the government, this is that case because the evidence was all in the record and the board was perfectly aware of it and deliberately closed its eyes to it, deciding not to examine it. So for that reason, I think the board needs a do-over on this, on the deferral claim, and I think it's beyond dispute that the categorical approach cannot involve this court or the board in looking back at the state of the conviction, the date of the conviction. And I'll just say one thing. As a practical matter, if the government's approach is right, then what that means for this court and for the board is that if you have ten cases that all come up and say they all involve convictions for the same statute and it's the categorical approach that you're supposed to be applying, then instead of being able to make that decision quickly, which is the point of the categorical approach, its efficiency, instead of being able to say, okay, we now know what the statute means, that means this would apply to all of these cases, you're going to have to dig up what the date of the conviction was for every single case and then try to figure out what the state of the common law was at the time of the conviction, which destroys the efficiency that the categorical approach was designed to create. So I think this court needs to very clearly run. The categorical approach was designed for efficiency purposes? Yes. I feel better knowing that. Well, you can help make it more efficient. I see my time is up, so I'll submit. Thank you, Your Honor. Thank you very much. And thank you for taking this matter on pro bono. All right, that concludes this session, and we'll convene again when we convene again.
judges: Pregerson, Fernandez, Nguyen